UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,　　　　　　　　　　　　　Civil No. 1:21-cv-608

vs.

$147,146.97 IN FUNDS FROM LAKE
MICHIGAN CREDIT UNION BUSINESS
CHECKING ACCOUNT #0001769044
HELD IN THE NAME OF UNIQUE
IMPORT & EXPORT, LLC,

      Defendant.
_____/

**VERIFIED COMPLAINT FOR FORFEITURE *IN REM***

NOW COMES Plaintiff, United States of America, by and through its attorneys, Andrew Byerly Birge, United States Attorney for the Western District of Michigan, and Daniel T. McGraw, Assistant United States Attorney, and states upon information and belief that:

**NATURE OF THE ACTION**

1.　This is a civil forfeiture action filed pursuant to 18 U.S.C. § 981(a)(1)(C) and Supplemental Rule G(2) of the Federal Rules of Civil Procedure to forfeit and condemn to the use and benefit of the United States of America $147,146.97 in funds seized from Lake Michigan Credit Union business checking account #0001769044 held in the name of Unique Import & Export, LLC (the "Defendant Property").

1

## THE DEFENDANT IN REM

2. The Defendant Property consists of $147,146.97 in funds that was seized on or about February 22, 2021 from Lake Michigan Credit Union business checking account ending 9044 by the United States Secret Service (USSS) in Cascade, Michigan. The Defendant Property is currently in the custody of the USSS.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 1345 and 1355(b)(1)(A) because this action is being commenced by the United States of America as plaintiff and the acts giving rise to the basis for forfeiture occurred in the Western District of Michigan.

4. Venue is proper before this Court pursuant to 28 U.S.C. § 1395(b), because the Defendant Property is located within the Western District of Michigan.

## BASIS FOR FORFEITURE

5. As set forth below, the Defendant Property is subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(C) because it constitutes any property, real or personal, which constitutes or is derived from proceeds traceable to wire fraud, in violation of 18 U.S.C. § 1343.

## "ROMANCE FRAUD" OR "ADVANCE FEE FRAUD" SCHEMES

6. Criminal organizations engage in a variety of schemes with the intention of convincing an unwitting victim to send co-conspirators money. One such scheme involves "romances," where the online co-conspirators communicate primarily through text messaging or through other online messaging platforms to

avoid direct communication. The communications include promises of future wealth and a permanent romantic relationship. As the "romance" continues, the co-conspirators request that the victim provide money to support personal expenses or fictitious business needs. The online co-conspirators frequently advise the victim that the funds will be reimbursed (i.e., advance fee fraud).

7. After the victim has exhausted his or her personal funds, the co-conspirators will evolve the "romance" and direct the victim to open bank accounts and even form businesses (shell companies) to further their fraud scheme. When this occurs, the co-conspirators utilizes the bank account and shell company to facilitate the transfer of funds from other victims to the shell companies for the original romance victim to make purchases to send elsewhere, often overseas, or to transfer funds to other victims or money mules. The bank account and shell company provide a sense of legitimacy to the victim and typically generates less suspicion by financial institution investigators. The unwitting victim almost always becomes a money mule for the criminal organization.

## FACTS SUPPORTING FORFEITURE

8. B.W. is a retired nurse's aide who resides in this judicial district. B.W.'s husband died in 2017.

9. In 2018, B.W. met an individual online who claimed to be "Christian Knox." According to B.W., Knox owned his own wiring company and was working on a military base in Syria. B.W. believed that Knox was in love with her, and planned to move to Michigan to marry her. Since B.W. began corresponding with Knox, B.W.

used her personal credit cards to pay for various expenses for Knox, and estimated that she incurred approximately $30,000 in credit card debt as a result.

10. On August 20, 2020, at the direction of Knox, B.W. filed Articles of Incorporation for a business named "Unique Import and Export, LLC." B.W. also opened a business checking account (#0001769044) at Lake Michigan Credit Union in the name of Unique Import and Export, LLC (the "Subject Account").

11. Knox and other unknown individuals mailed cash to B.W. that she deposited in the Subject Account. Funds were also directly deposited into the Subject Account, although B.W. could not recall exactly how the funds were deposited. Occasionally, Knox directed B.W. to send cash or checks through Federal Express to other individuals that B.W. did not know.

12. A review of bank records for the Subject Account from September to December 2020 show ACH deposits that utilized interstate wires, totaling almost $500,000:

| Date | Amount | Remitter |
|---|---|---|
| 9/17/2020 | $3,000.00 | C.D.B. |
| | | Summerfield, FL |
| 9/18/2020 | $10,000.00 | J.A.W. |
| | | St. Petersburg, FL |
| 9/18/2020 | $4,000.00 | J.V. |
| | | St. Petersburg, FL |
| 9/22/2020 | $5,000.00 | R.P. |
| | | Thiensville, WI |
| 9/23/2020 | $7,500.00 | J.V. |
| | | St. Petersburg, FL |
| 10/2/2020 | $7,000.00 | S.J. |
| | | Oakwood, GA |
| 10/5/2020 | $49,949.73 | B.S.S. |
| | | Kuala Lumpur |

| Date | Amount | Remitter / Location |
|---|---|---|
| 10/5/2020 | $49,949.73 | B.S.S. |
| | | Kuala Lumpur |
| 10/9/2020 | $5,730.00 | H.J. |
| | | Elbow SK |
| 10/21/2020 | $6,980.00 | T.T.V.D. |
| | | Gatineau QC |
| 10/26/2020 | $60,000.00 | C.C. |
| | | Waddell, AZ |
| 11/9/2020 | $4,000.00 | C.W.C. |
| | | Amsterdam |
| 11/17/2020 | $20,000.00 | P.B. |
| | | Escanaba, MI |
| 11/23/2020 | $15,000.00 | P.B. |
| | | Escanaba, MI |
| 11/24/2020 | $18,000.00 | J.D.A. |
| | | Denton, TX |
| **11/30/2020** | **$80,000.00** | **D.F.W.** |
| | | **Soddy Daisy, TN** |
| 12/8/2020 | $1,000.00 | R.L.W. |
| | | Trenton, NE |
| 12/8/2020 | $2,700.00 | Y.R.D. |
| | | Beltsville, MD |
| 12/14/2020 | $30,000.00 | Y.K.H. |
| | | New York, NY |
| 12/15/2020 | $1,000.00 | T.R. |
| | | Spring Grove, VA |
| **12/15/2020** | **$63,000.00** | **R.T.** |
| | | **Concord, NH** |
| 12/15/2020 | $50,000.00 | Q.L.H.C. |
| | | San Jose, CA |
| **Total** | **$493,809.46** | |

13. Upon information and belief, no legitimate business relationship existed between the remitters listed above and Unique Import and Export, LLC.

14. In or about March 2020, a woman identified as "Somsie Pdr," also known as "Rosina Carter," added **D.F.W.** as a friend on Facebook. Carter and **D.F.W.** began exchanging text messages and e-mails. **D.F.W.** has never physically met Carter, who

5

claimed to be from Illinois. Carter later claimed that her father left her a multimillion-dollar inheritance, but that she needed money for various reasons in order to gain access to the inheritance money. Carter was to repay **D.F.W.** when everything was settled. **D.F.W.** subsequently wired money to various bank accounts to assist Carter with securing the inheritance money. **D.F.W.** could not specifically recall the amount of money he transferred to the Subject Account, but according to bank records, he transferred $80,000 on or about November 30, 2020. **D.F.W.** estimated that he sent more than $500,000 to Carter via wire transfers to multiple bank accounts, none of which were in Carter's name. **D.F.W.** also sent smaller amounts of money to Carter via Zelle, a money transfer service.

15. In or about September 2020, **R.T.** met "Allen Casale" on the dating website SilverSingles.com, and they started a romantic online relationship. Casale claimed his subscription to the dating website was ending, and asked to move their communications to text messaging. **R.T.** has never met Casale in person, but has spoken to Casale over the telephone and claims Casale has a heavy Italian accent. Casale told **R.T.** that he worked as an independent contractor for a government in the field of satellite technology. Casale would not identify the government. Casale claimed he needed money for a replacement part after equipment broke during an experiment. **R.T.** transferred $63,000 to the Subject Account to assist Casale with buying the replacement part. **R.T.** was hesitant but sent the money anyway. **R.T.** sent another $12,000 wire transfer to Casale but did not know the bank account

information. Casale told **R.T.** that he was sending her gold for safe keeping and had sent her video of the gold, but **R.T.** never actually received any gold from Casale.

16. According to bank records for the Subject Account, the following cashier's checks were drawn on the account and made payable to various automobile auction businesses, including Insurance Auto Auctions, Inc. (IAAI), Vinali & Assoc. Logistics, Copart, and Vship Co., totaling over $400,000 during the same time period as the deposits:

| Date | Payee | Amount |
|---|---|---|
| 9/22/2020 | IAAI | $ 14,000.00 |
| 9/22/2020 | Vinali & Assoc Logistics | $ 3,250.00 |
| 9/24/2020 | IAAI | $ 10,300.00 |
| 9/24/2020 | IAAI | $ 1,000.00 |
| 9/29/2020 | IAAI | $ 1,229.00 |
| 10/5/2020 | IAAI | $ 64,890.00 |
| 10/6/2020 | IAAI | $ 7,143.00 |
| 10/6/2020 | IAAI | $ 11,285.00 |
| 10/7/2020 | IAAI | $ 7,232.00 |
| 10/7/2020 | IAAI | $ 19,433.00 |
| 10/14/2020 | IAAI | $ 6,293.00 |
| 10/23/2020 | IAAI | $ 7,073.00 |
| 10/27/2020 | Copart | $ 52,756.00 |
| 10/30/2020 | Copart | $ 7,000.00 |
| 11/13/2020 | IAAI | $ 9,777.00 |
| 11/13/2020 | IAAI | $ 2,700.00 |
| 11/13/2020 | IAAI | $ 8,301.00 |
| 11/17/2020 | IAAI | $ 9,717.50 |
| 11/19/2020 | IAAI | $ 16,169.00 |
| 11/19/2020 | IAAI | $ 3,863.00 |
| 12/1/2020 | Copart | $ 68,457.00 |
| 12/2/2020 | IAAI | $ 3,663.00 |
| 12/2/2020 | IAAI | $ 22,636.00 |
| 12/2/2020 | IAAI | $ 5,520.00 |
| 12/2/2020 | Vship Co | $ 15,000.00 |
| 12/8/2020 | IAAI | $ 21,116.75 |
| 12/8/2020 | IAAI | $ 3,423.00 |

| 12/8/2020 | IAAI | $ 10,956.00 |
|---|---|---|
| | **Total** | **$ 414,183.25** |

17. At the direction of Knox, B.W. obtained the cashier's checks listed in the table above. Knox sent B.W. text messages that contained information regarding the lot number and buyer number for various automobile auctions. B.W. would then obtain cashier's checks made payable to "IAAI" to pay for the vehicles purchased by the "buyer." B.W. was not the actual buyer of these vehicles, but rather a middleman or money mule.

18. The funds contained in the Subject Account were the proceeds of a romance scheme or an advance fee scheme fraud. A criminal organization used B.W. to facilitate the transfer of funds obtained under false pretenses and convert those funds to goods—in this case, used cars—with the intention of concealing the origins of the funds and creating an appearance of legitimacy.

19. On or about February 22, 2021, USSS executed a federal seizure warrant for the Defendant Property, which was funds in the amount of $147,146.97 remaining in the Subject Account, all of which constituted or was derived from proceeds traceable to wire fraud, in violation of 18 U.S.C. § 1343.

## CLAIM I
### (Forfeiture of Proceeds Traceable to Wire Fraud)

20. Plaintiff hereby incorporates by reference the allegations set forth in paragraphs numbered 1 through 19, as referenced above.

21. The Defendant Property is forfeitable to the United States pursuant to 18 U.S.C. § 981(a)(1)(C) because it constitutes or is derived from proceeds traceable to a violation of 18 U.S.C. § 1343.

## RELIEF

Wherefore, the United States prays that the usual process for forfeiture issue against the Defendant Property; that due notice be given to all interested parties to appear and show cause why forfeiture to the United States of America should not be decreed; and that the Defendant Property be condemned and forfeited to the United States of America and be delivered into the custody of the United States Secret Service for disposition according to law; and for such other relief as this Court may deem just and proper.

Dated: July 19, 2021

ANDREW BYERLY BIRGE
United States Attorney

_____
DANIEL T. McGRAW
Assistant United States Attorney
P.O. Box 208
Grand Rapids, MI 49501-0208
(616) 456-2404

## VERIFICATION

I am a Special Agent with the United States Secret Service and I am the lead investigator of the romance and advance fee fraud schemes described herein.

I have read the contents of the foregoing Verified Complaint for Forfeiture *In Rem* and the statements contained therein are true to the best of my knowledge and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: July 19, 2021

STEVEN McMAHON
Special Agent
United States Secret Service